UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID BOMBOY,<br><br>Defendant | CRIMINAL NO. 3:19-CR-00157<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 34). Defendant, David Bomboy, moves this Court to reconsider its earlier order of detention pursuant to 18 U.S.C. § 3142(f), or to consider temporary release pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 36).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On May 14, 2019, Bomboy was charged by Indictment with conspiracy to distribute and possession with intent to distribute methamphetamine. (Doc. 1). Bomboy appeared before this Court for his initial appearance and arraignment on May 16, 2020, at which time Bomboy waived his right to a detention hearing and was ordered detained pending further proceedings. (Doc. 11).

Bomboy is currently housed at Lackawanna County Prison. On April 7, 2020, Bomboy, through counsel, filed a motion to review detention pursuant to §§ 3142(f) and 3142(i), asking this Court to reopen its order of detention, or alternatively, seeking an order of temporary release to facilitate the preparation of a defense and due to a compelling reason – that being the risk associated with being incarcerated during the current COVID-19 pandemic. Bomboy, who is 60 years old, reports having a heart murmur and high blood

pressure, and submits that these conditions place him at higher risk for contracting the COVID-19 virus. Bomboy also argues that the virus poses a risk to him and to other inmates, and that his ability to prepare his defense and meet with counsel is impeded by the pandemic. He seeks release to live with his friend, Jeff Nye, who he also offers as a third-party custodian.

Counsel for Bomboy filed a Notice with the Court on April 9, 2020 indicating that the parties were unable to come to an agreement regarding Bomboy's release from detention, and deferring to the Court as to whether a hearing on the motion is necessary. (Doc. 37). As the issue of detention was never argued before the Court,[1] the Court conducted a detention hearing on May 5, 2020.

## II.  DISCUSSION

### A.  DETENTION PURSUANT TO § 3142

Under the Bail Reform Act, certain charges, such as those in the instant case, raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). A defendant may rebut the presumption of detention by producing "some credible evidence ... that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The charges against Bomboy are serious drug

---

[1] The Government mistakenly avers that this Court's previous detention order "was entered following a careful assessment of the defendant's individual circumstances, and was based on this Court's findings that the defendant was a danger to the community and/or a flight risk, and that no combination of conditions could adequately address those risks." (Doc. 36, at 12). The Government also incorrectly states that the Court considered the factors set forth in 18 U.S.C. § 3142(g). (Doc. 36, at 14). In actuality, the Court has not previously considered or assessed Bomboy's circumstances at all or considered the § 3142(g) factors.

trafficking charges which raise the presumption under § 3142(e)(3). In order to rebut the presumption of detention, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Santiago-Pagan*, 1:08-CR-0424-01, 2009 WL 1106814, at *4 (M.D. Pa. Apr. 23, 2009); quoting *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). If the defendant is able to meet this burden of production, the government bears the ultimate burden of persuasion. *See United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir.1986). Even if a defendant rebuts the presumption of dangerousness or flight, however, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Santiago-Pagan*, 2009 WL 1106814, at *4; quoting *United States v. Farris*, No. 2:08cr145, 2008 WL 1944131, at *8 (W.D.Pa. May 1, 2008) (internal citations omitted).

Bomboy's primary argument for release focuses on the risks associated with being in prison during the COVID-19 pandemic. Although he offers his friend, Jeff Nye, as a third-party custodian, he fails to rebut the presumption of detention in this case. Rebuttal of the presumption of dangerousness requires a showing that defendant's criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. Though counsel for Bomboy offered that Nye is prepared to offer Bomboy a place to live[2] and to report any violations of his conditions of pretrial release, the record before the Court does not reflect that Bomboy has a respect for the law, personal reliability, or that his criminality is a thing of the past. *Santiago-Pagan*, 2009 WL

---

[2] At the time of the hearing, counsel offered that Bomboy would share a room with Nye at a residence Nye shares with several other individuals.

3

1106814, at *5. The Court does not find that Bomboy has rebutted the statutory presumption of detention.

Even if Bomboy had rebutted the presumption, however, consideration of the factors under the Bail Reform Act require that Bomboy be detained pending trial, as "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

First, as to the nature and circumstances of the charged offenses, the Court finds that the offenses alleged against Bomboy are very serious drug charges which carry with them significant penalties. This factor weighs heavily in favor of detention. *Santiago-Pagan*, 2009 WL 1106814, at *6 (M.D. Pa. Apr. 23, 2009); *United States v. Perry*, 788 F.2d 100, 111 (3d Cir. 1986); *United States v. Rice*, Criminal Action No. 17-CR-1450, 2017 WL 6349372, at *7 (W.D. Pa. Dec. 13, 2017). Second, the weight of the evidence proffered by the Government at the hearing is significant, and favors detention.

Bomboy's nature and characteristics, the third factor for consideration under the Bail Reform Act, also weigh in favor of detention. Consideration of this factor includes

examination of the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. 18 U.S.C. § 3142(g)(3). The balance of Bomboy's history and characteristics weighs heavily in favor of detention. Bomboy is receiving medical care for any medical issue while in prison; he offered no plan for medical should he be released, or any indication that the medical care he might receive in the community is better than that which he is receiving while detained, without continuing to be a threat to the safety of others. *See United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant tested positive for COVID-19, holding that he is receiving medical care in jail, he has no plan for medical care should he be released, and that there is no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others). Moreover, Bomboy's criminal history is lengthy, severe, and includes more than 20 arrests and convictions in state and federal court, including a conviction in this court for possession of a firearm in furtherance of a drug trafficking crime. For that conviction, Bomboy was sentenced to 120 months in prison, followed by five years of supervised release. His pretrial services report indicates that his supervise release term was revoked twice for violating the terms of his supervised release. The instant offenses allegedly occurred less than six months after completing that term of supervised release.

Bomboy has a history of engaging in dangerous behavior, not complying with terms of release, and being unable to follow rules and orders of the Court. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020). Bomboy's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee*, 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). It may also place the United States Marshals Service officers at risk if re-apprehending him is necessary. *See United States v. Lunnie*, 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020).

Finally, the Court considers the fourth detention factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Lee*, 2020 WL 1541049, at *4–5; 18 U.S.C. § 3142(g)(4) (emphases added). Bomboy's release, which the Court has previously determined to pose a danger to the community, now poses a greater danger. That danger now includes not only this Court's previous conclusion that he will continue to engage in the same types of unlawful and potentially dangerous conduct that led to the charges in this case, but also the heightened safety risks that Bomboy's release poses to the probation officers tasked with monitoring his behavior if he were to be released on supervision. *Lee*, 2020 WL 1541049, at *4-5; *see also United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (motion for release denied, in part, where defendant did not convince the court that her release would not pose a danger to the community).

Upon consideration of the evidence and proffers advanced by the parties, the Court finds that Bomboy has failed to rebut presumption of continued danger to the community. Even if he had rebutted the presumption, the Government has shown by clear and convincing evidence that there is no condition or combination of conditions that would ensure the safety of the community upon his release. Detention pending further proceedings is therefore appropriate.

B.    TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Bomboy also moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

Until recent weeks, most motions brought pursuant to § 3142(i) were analyzed under the "necessary for preparation of the person's defense." Not much authority existed as to when temporary release is justified under § 3142(i) based on "another compelling reason." Typically, relief was granted under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v.*

7

*Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Scarpa,* 815 F. Supp. 88 (E.D.N.Y. 1993) (permitted the defendant to be released under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions.); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (district court ordered the release of a defendant who had sustained multiple gunshot wounds, was partially paralyzed, could not walk, had lost some arm function, had a wound the size of a fist, and required 4-5 contracted security guards on a daily basis to supervise him; the Bureau of Prisons would not take custody of him because it could not provide the medical care that he required.) More recently, in *United States v. Garcha*, the Court granted defendant's motion for pretrial release pursuant to § 3142(i) where the defendant was HIV-positive, had a brain tumor, and suffered a pulmonary embolism in 2017, and thus was not only particularly susceptible to contracting the COVID-19 virus, ***but was also*** unable to obtain the necessary MRI and treatment for his brain tumor while in prison.) 2020 WL 1593942, at *2 (N.D. Cal. Apr. 1, 2020) (emphasis added).

      Since the onset of the COVID-19 pandemic, and the filing of motions seeking pretrial release, release pending sentencing, compassionate release, and delays in report dates, courts across the country have begun to consider whether the pandemic constitutes a "compelling reason" for temporary release. Consistent in these decisions are findings that the risk of exposure, actual exposure, or contracting the virus, is just one factor to be considered and weighed against the other factors under the Bail Reform Act, including previous findings of danger to the community and risk of flight. Further, the existence of a widespread health risk

or mere speculation about potential exposure to the virus does not constitute a "compelling reason" for temporary release under § 3142(i).[3]

Exposure to COVID-19 is just one factor to be weighed against the other factors considered by the court in ordering detention. Further, the potential exposure exists anywhere in the community, not just in jail, and where necessary steps and precautions to help stop the spread of the virus are being taken by the county jail, along with the court and other authorities, and where there is no indication that a defendants' medical needs are not being met, speculation concerning possible future conditions does not constitute a "compelling reason" for temporary release, especially where the court previously found defendant's release would pose a danger to the community. *See United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (defendant not entitled to release pending final supervised release revocation hearing where she did not articulate any unique susceptibility to the Covid-19 virus and she did not convince the court that her release would not pose a danger to the community); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while Defendant indicates that he suffers from

---

[3] In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). In considering a motion to continue a self-surrender date in light of the COVID-19 pandemic, the court noted that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. *Roeder*, 20-1682, 2020 WL 1545872, at *3.

hypertension, sleep apnea and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions are not sufficient to establish a compelling reason for release given the danger to the community if he is released and the efforts being undertaken at the [jail] to combat the spread of the virus) (citing *United States v. Davis,* No. 19-1604, Doc. No. 50 (3d Cir. March 20, 2020); *United States v. Willie Harris,* No. 18-152, Doc. No. 986, Mem. Order (W.D. Pa. March 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Veras*, 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020); *United States v. Williams*, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates have tested positive for COVID-19 and defendant suffers from allergies and asthma); *United States v. William Bilbrough*, *IV*, TDC 20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, TDC-19-238 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Teon Jefferson*, CCB-19-487 (D. Md. Mar. 23, 2020) (denying the defendant's motion even though the defendant was asthmatic). Even where a defendant tests positive for COVID-19, that new circumstance is just one factor to consider in weighing a request for temporary release under § 3142(i). *See United States v. Cook*, 3:16-CR-00312, 2020 WL 1939612, at *4 (M.D. Pa. Apr. 22, 2020) (denying a motion for review of pretrial release by a detainee diagnosed with the virus where he was receiving medical care for COVID-19 while detained, nothing before the Court indicated that he had a plan for medical care should he be released, or that the medical care

10

he might receive in the community was better than that which he is receiving while detained, without continuing to be a threat to the safety of others); *United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant is receiving medical care in jail, has no plan for medical care should he be released, and no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others).

In determining whether the defendant establishes a "compelling reason" for temporary release pursuant to § 3142(i), the Court considers four factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act. *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his

abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

Considering the factors outlined in *Clark*, the Court concludes that Bomboy has not established a compelling reason to grant him temporary release under § 3142(i). First, Bomboy fails to rebut the presumption of detention. Further, consideration of the factors § 3142 – the weight of the evidence against the defendant; the history and characteristics of the defendant, including any health issues and his extensive prior criminal history, and the danger to the community should he be released – weigh in favor of detention. No condition or combination of conditions could reasonably assure the safety of the community.

Second, although Bomboy submits that his heart murmur and high blood pressure increase his risks from exposure to the COVID-19 virus, nothing in the record reflects that he is not receiving necessary treatment in prison, or that . Although mindful of the magnitude of the COVID-19 pandemic,[4] and the extreme health risks it presents within the jail and prison

---

[4] On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic. *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency. *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at*

setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Bomboy's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. If released, Bomboy submits that he will live in Scranton with a friend, Jeff Nye, with whom he proposes to share a room in a house with several other adults. This plan does not address any of the risk factors that would arise if Bomboy were released from custody. *Clark,* 2020 WL at 1446895, at *6. The information offered by the Government establishes that there is a plan to address and mitigate the risks of COVID-19 at the prison.[5] Despite Bomboy's conclusory

---

https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

As of the date of this writing, there are 3,435,894 confirmed cases worldwide and 239,604 deaths; in the United States, there are 1,125,719 confirmed cases and 60,710 deaths. *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 4, 2020).

[5] In its brief in opposition, the Government describes and attaches the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 36, at 37-39). The prison has implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly

allegations that the prison will be unable to manage care of inmates during the pandemic, the information before the Court includes the prison's actual plan to do just that. *Boatwright*, 2020 WL 1639855, at *7. Further, Bomboy does not address the extent to which his risks of infection could be exacerbated if he were to be released to live with his mother, girlfriend, and extended family. Nor does he address how his other health issues – the heart murmur and the high blood pressure – will be treated. Bomboy offers no explanation of how the proposed living situation mitigates not only his risk of infection, but the also the risk of infection to everyone else in the house, and those individuals who come and go from the house on a regular basis.

Finally, the Court considers the likelihood that Bomboy's proposed release would increase COVID-19 risks to others. The Court has previously decided that Bomboy should be detained, in part because he was unable to comply with other court orders, and because of his criminal history. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Bomboy's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL

---

contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area. In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 36, at 37-39).

1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Bomboy's proposed temporary release[6] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

Bomboy also submits that his release is necessary for the preparation of his defense. The Court recognizes that the pandemic may pose obstacles to the preparation of a defense. However, in this case, Bomboy has not established that the restrictions in place at Lackawanna County Prison are such that they are a compelling reason for his temporary release. First, though not ideal, the prison still allows for attorney visits, albeit through a glass window. Nothing in the measures outlined by the prison indicate that attorney visits or calls are in any other way restricted. The Court is confident that the prison will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to its attention to cause concern. Bomboy has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time. *See Dodd*, 2020 WL 1547419 at *3.

III. **CONCLUSION**

The Court has considered the evidence presented by the Government and by Bomboy, including his medical information, his proposed release plan, and the response of

---

[6] Having determined that Bomboy does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

Lackawanna County Prison to the pandemic. However, even considering this information, the balance of the factors under the Bail Reform Act – the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community upon release – mandate that Bomboy remain detained, as there is no condition or combination of conditions that can reasonably assure the safety of the community should he be released.

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Bomboy's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Lackawanna County Prison has taken steps to minimize infection. There is no evidence that Bomboy is not getting the medical attention he needs. Additionally, Lackawanna County Prison has put in place protocols to allow for lawyer-client communications while also protecting against the spread of the virus. In sum, Bomboy has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

For these reasons, Bomboy's motion for pretrial release (Doc. 34) is **DENIED**.

An appropriate Order will follow.

**Dated: May 6, 2020**                                                                 *s/ Karoline Mehalchick*
                                                                                                       **KAROLINE MEHALCHICK**
                                                                                                       **United States Magistrate Judge**